UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO TULIO HERNANDEZ MENDEZ,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN; TODD BLANCHE; TODD M. LYONS; JESUS ROCHA; and JEREMY CASEY,<br>Respondents. | Case No.: 26-cv-4890-JES-BJW<br>**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br>**[ECF No. 5]** |

Before the Court is Petitioner Marco Tulio Hernandez Mendez's ("Petitioner") Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 5. Pursuant to the Court's order to show cause (ECF No. 6), Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 8, 9. For the reasons set forth below, the Court **GRANTS** the petition.

## I. BACKGROUND

Petitioner, a native of Guatemala, originally entered the United States without permission years ago. ECF No. 5 at 2. Subsequently, in 2023, he filed an affirmative asylum application with the United States Citizenship and Immigration Services ("USCIS"). *Id.*

He received a work permit and Social Security number, and alleges that he has complied with all requirements of pursuing this application. *Id.*

On June 15, 2026, while Petitioner was in a car on his way to work, the car was pulled over. *Id.* Petitioner alleges that he showed the officers his work permit and explained that he had filed for asylum, but was nevertheless taken into custody. *Id.* at 2-3. He further alleges that he was never shown any paperwork or given any reasons for the basis of his detention. *Id.* at 3. He is currently detained at the Imperial Regional Detention Facility.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

In the amended petition, Petitioner argues that his detention and the manner under which it was carried out violates the Due Process Clause of the Fifth Amendment, is invalid because it was a warrantless arrest, and requests release from custody. ECF No. 5 at 3-14.

### A. Due Process

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause

applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.

A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under *Mathews*, courts consider a three-part test to determine whether procedures utilized by the government violates due process: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

In the immigration habeas context, courts within the Ninth Circuit and elsewhere across the country have found due process violations in several situations. First, courts have found that noncitizens have a protectable liberty interest under due process when they have been afforded some type of parole or were released under Alternatives to Detention ("ATD") while in immigration proceedings. *See Minhas v. Bondi*, No. 26-CV-492-JES-BLM, 2026 WL 280220, at *2-3 (S.D. Cal. Feb. 3, 2026) (finding a due process violation based on prior grant of parole); *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *3-4 (S.D. Cal. Dec. 23, 2025) (same); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) (same); *Leiva Flores v. Albarran et al.*, No. 25-cv-09302-AMO, 2025 WL 3228306, at *5 (N.D. Cal. Nov. 19, 2025) (same); *Modrekiladze v. LaRose*, No. 26-CV-271-JES-DEB, 2026 WL 242041, at *2-4 (S.D. Cal. Jan. 29, 2026) (finding a due process violation based on release under ATD); *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (same); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025) (same).

Second, courts have found that noncitizens with final orders of removal also have a protectable liberty interest when they were released on orders of supervised release ("OSUP") during their removal process. *See Van Nguyen v. Noem*, No. 3:25-CV-3062-JES-VET, 2025 WL 3251374, at *2-4 (S.D. Cal. Nov. 21, 2025) (finding a due process violation based on prior grant of order of supervision); *Joseph v. Casey*, 817 F. Supp. 3d 962, 966-68 (S.D. Cal. 2025) (same); *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) (same); *Delkash v. Noem*, No. 5:25-CV-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (same); *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025) (same).

Third, even where noncitizens were given limited parole that expired after a set time period, courts have held that once the liberty interest was established, the expiration of parole itself does not automatically extinguish the liberty interest in the due process context. *See Totskii v. LaRose*, No. 26-CV-1053-JES-JLB, 2026 WL 905331, at *1-3 (S.D. Cal. Apr. 2, 2026); *Isoev v. Larose*, No. 26-CV-1361-JES-DDL, 2026 WL 776308, at *2-3 (S.D. Cal. Mar. 19, 2026); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179 (D. Nev. 2025); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1108-11 (E.D. Cal. Nov. 22, 2025). In so holding, courts in part reasoned that the liberty interest is strengthened by the government *not* seeking to return the noncitizen to custody upon the expiration of their parole and, instead, permitting the noncitizen to continue to remain free in the country afterwards with full knowledge of their immigration status. *Rodriguez Cabrera*, 808 F. Supp. 3d at 1179.

Fourth, courts have extended finding a protectable liberty interest to where noncitizens were not granted some form of affirmative release by the government, but made their presence known to the government and the government then makes a decision *not* to detain them. *See Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (finding liberty interest from "government's

decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years'"); *Zhou v. Janec[k]a, et al.*, No. 5:26-CV-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026) ("Courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, and the government chose not to detain them."); *Gagik T. v. Chestnut*, No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) ("Judges of this district and others have repeatedly held, on facts materially similar to these, that a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process."); *see also Romero Teran v. LaRose*, Case No. 26-cv-4591-RBM-MSB (S.D. Cal. Sept. 21, 2026), ECF No. 6 at 5; *Jemna v. Mullin*, Case No. 26-cv-2396-RBM-VET (S.D. Cal. Sept. 29, 2026), ECF No. 13 at 8-9. Relying on these cases, this Court recently adopted the reasoning in *Millan Berrocal v. Mullin et al.*, No. 26-CV-5391-JES-GC, 2026 WL 3020431, at *2-3 (S.D. Cal. Oct. 7, 2026).

Here, Petitioner's case differs from the immediately-preceding cases in one respect. In each of the cases above, the noncitizen entered the United States initially on a visa. Here, Petitioner appears to have entered without permission. Thus, the Court must consider whether this difference affects the liberty interest the prior courts have identified. Based on the factors that courts have relied upon to find the liberty interest, the Court concludes that it does not.

In immediately-preceding cases, courts relied upon the filing of the affirmative asylum application to support the liberty interest, because this filing is the event that puts the government on notice of the noncitizen's presence in the United States. At this point, the government presumably may seek to investigate the status of the noncitizen filing for asylum, and make a decision whether to put them into removal proceedings and make the decision to detain them or allow them to remain free in the country. Courts have further

relied on affirmative actions taken by the government after the asylum application was filed, the most notable example being the grant of work authorization ("EAD") to the noncitizen. Courts have found that work authorization is a further grant of authority, permitting the noncitizen to remain free in the United States while their asylum application is pending.

In contrast, the manner of the noncitizen's initial entry into the United States does not play a central role in the legal analysis under due process. It is true that the manner of entry of the noncitizens in the aforementioned cases through an issued visa may be more factually compelling, but even in each of those cases, the visa expired at some point and the noncitizen continued to reside in the United States. *See Gagik*, 2026 WL 1837413, at *3 (noting that even after petitioner's initial permission to enter the United States expired, the government chose not to detain him and continued "sanctioning his continued presence in the United States by granting and renewing his employment authorization"). Even where the visa expiration occurred *before* the noncitizen filed the affirmative asylum application, courts have continued to look to other factors, like granting of employment authorization, as an affirmation of the government's implicit permission to allow the noncitizen to remain out of detention. *See James Orlando H.C. v. Chestnut*, No. 1:26-CV-03823-MWJS, 2026 WL 1917113, at *4 (E.D. Cal. July 3, 2026).

Indeed, other district courts have agreed and found a protectable liberty interest in situations where the noncitizen entered without permission, rather than on a visa. In *E.E.O.H v. Noem, et al.*, the noncitizen had entered the United States without inspection in June 2021. Case No. 26-cv-1266-JLT-SAB-HC, 2026 WL 850363, at *1 (E.D. Cal. Mar. 26, 2026). He then filed an affirmative application for asylum in October 2023 and subsequently obtained work authorization that was valid through 2029. *Id.* He was detained while at work at a construction site and then placed into removal proceedings at that time. *Id.* He argued that he "already presented himself to the authorities on his asylum claim, for which he had to appear for fingerprinting and background checks. Respondents issued him a work permit valid through 2029, which created a liberty interest as well as an 'implicit

promise' that Petitioner would be free from custody during that time so long as he obeyed laws and remained eligible for the relief he was seeking." *Id.* at *3. The court agreed, relying on cases like *Kharitonova* discussed above, and found a protectable liberty interest based on his affirmative asylum application and work authorization. *Id.* at *3-4. The court then applied the *Mathews* framework to find a procedural due process violation and ordered the noncitizen's release. *Id.* at *4-7.

Similarly, the Court in *Mendez Tzoc v. LaRose, et al.*, came to the same conclusion. Case No. 26-cv-3965-GPC-VET, 2026 WL 222761 (S.D. Cal. Aug. 3, 2026). The noncitizen in that case also entered the United States without inspection, and resided in the country for fourteen years before he filed an affirmative asylum application in 2024. *Id.* at *1. After such filing, he appeared for a biometrics and fingerprinting appointment, and applied for and was given work authorization through 2029. *Id.* He was detained in 2026 and placed into removal proceedings. *Id.* In analyzing the noncitizen's due process claim, the court, like in *E.E.O.H.*, analogized the circumstances to *Kharitonova* and similar cases in that line. *Id.* at *2-3. The Court found a substantial liberty interest due to the government's conduct, noting that during the period the noncitizen was in the United States, "the Government accepted and processed his asylum application, required him to submit fingerprints and biometric information, conducted background and security checks, and issued employment authorization valid through 2029." *Id.* at *3. Thus, the Court concluded that "with full knowledge of Petitioner's identity and immigration circumstances, the Government repeatedly exercised authority over his case while permitting him to remain at liberty as his asylum application remained pending." *Id.*

The Court is persuaded by and joins the reasoning of the *E.E.O.H* and *Mendez Tzoc* courts, and finds that Petitioner has a protectable liberty interest. This conclusion is logically supported by the progression of cases above where courts have found a liberty interest. That liberty interest arises from the actions taken by the government after being made aware of the noncitizen's presence. Here, in Petitioner's case, the government's actions are identical to those in many of the cases cited above—namely, processing

Petitioner's affirmative asylum application, granting Petitioner's work authorization, and permitting Petitioner to remain free while his asylum application was pending for at least three years. Under these factual circumstances, the Court finds no reason to reach a different conclusion here.

Having found a protectable liberty interest under due process, the Court also concludes that the *Mathews* factors all support a finding that the government violated Petitioner's due process rights when it detained him in June 2026 without any notice or opportunity to be heard. As to the first factor, courts have routinely found that noncitizens have a significant liberty interest in remaining free from detention where they were permitted to reside free in the United States for a number of years. *Kharitonova*, 2026 WL 531441, at *3; *Zhou*, 2026 WL 2365550, at *5 (finding significant liberty interest in "remaining in the community with her husband and pursuing her applications for immigration relief"); *Gagik*, 2026 WL 1837413, at *4 ("[Petitioner's] interest in freedom from physical detention is weighty."); *Mendez Tzoc*, 2026 WL 222761 at *3 ("The private interest is particularly weighty because Petitioner's detention interrupted a longstanding status quo that the Government itself had affirmatively maintained through years of processing Petitioner's affirmative asylum application and related benefits.").

As to the second factor, the crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (citation omitted). Thus, this factor also weighs in favor of Petitioner, where the risk of deprivation is high compared without a pre-deprivation process. *Gagik*, 2026 WL 1837413, at *4 ("The risk of erroneous deprivation from seizing a long-present, work-authorized asylum applicant with no criminal history, without any prior opportunity to be heard, is substantial, and the value of a pre-deprivation hearing in reducing that risk is correspondingly high.").

Finally, as to the third factor, Respondents have not asserted any legitimate interest in detaining Petitioner without a pre-detention hearing. *See generally* ECF No. 8. "In immigration court, custody hearings are routine and impose a minimal cost." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (cleaned up). Indeed, courts have

recognized that "[i]f the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Kharitonova*, 2026 WL 531441, at *3; *Zhou*, 2026 WL 2365550, at *6.

Thus, the Court finds that Petitioner's detention without notice or a pre-deprivation hearing violates due process and renders his detention unconstitutional.[1]

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Because the Court grants the petition on the procedural due process ground, Respondents are **ORDERED** to **immediately** release Petitioner from custody. The Court declines at this time to address the other grounds raised in the petition. The Parties are **ORDERED** to file a Joint Status Report by **October 28, 2026**, confirming that Petitioner has been released.

The Clerk of Court is **ORDERED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: October 23, 2026

Honorable James E. Simmons Jr.
United States District Judge

[1] In their return, Respondents argue that the petition is moot because Petitioner is only entitled to a bond hearing and a bond hearing has not been provided to date only because Petitioner withdrew his request for one. ECF No. 8 at 2-3. The Court rejects this argument in light of its finding that Petitioner is entitled to release under his due process claim.